[Crim. No. 27671. Second Dist., Div. Four. May 28, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
CLAUDE W. BAESKE, Defendant and Appellant.

776

COUNSEL .

Michael G. McGrath, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**JEFFERSON (Bernard), J.**—By information defendant Baeske was charged with robbery in violation of Penal Code section 211. It was alleged that defendant was armed with a deadly weapon at the time of

the commission of the offense within the meaning of Penal Code sections 3024 and 12022. It was also alleged that defendant used a firearm within the meaning of Penal Code section 12022.5.

Defendant, represented by a deputy public defender, entered a plea of not guilty. Trial was by jury. The jury found defendant guilty of robbery,[1] and further found that defendant had used a firearm during the commission of the offense. Defendant's motion for a new trial was denied. Probation was denied; defendant was sentenced to state prison for the term prescribed by law. Defendant appeals from the judgment of conviction.

The record adduced below reveals that on October 14, 1974, between 2 p.m. and 2:30 p.m., Leon Martin, the owner of a Sylmar liquor store, was working in the refrigerator of the store. Two men walked into the store, and one of the men, the heaviest of the two, selected some cans of beer from the refrigerator; Martin walked to the cash register and began to pack these items. While he was doing this, the other man came behind the counter and, at a distance of about five feet from Martin, displayed a .45 caliber revolver. This man told Martin to lie down on the floor, and Martin complied. The man with the gun then took approximately $100 from the cash register. Meanwhile, the other man stayed in front of the counter.

The man with the gun pocketed the money, and told Martin to stay on the floor for five minutes. The two men then left the store. As soon as Martin heard the front door close, he grabbed his own gun, a .22 caliber

---

[1]The jury was instructed that: "Robbery which is perpetrated by one or more persons any one of them being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree. [¶] If you should find the defendant guilty of robbery, it will be your duty to determine the degree thereof and to state that degree in your verdict." The clerk's transcript indicates that the jury found defendant guilty of robbery and that he did use a firearm but no degree was specified in the verdict.

The judgment entered in the court's minutes refers to the defendant's having been found guilty of "ROBBERY, in violation of Section 211, Penal Code, a felony, in the second degree, as charged in the information, that at the time of the commission of the offense, defendant did use a firearm, to witt [*sic*], a .45 caliber automatic, within the meaning of Section 12022.5 Penal Code." In pronouncing sentence, the judge orally stated that defendant was being sentenced "[f]or the crime of robbery in the 1st degree," according to the reporter's transcript. In view of the confused state of the record, we point out that if the jury fails to set the degree of the robbery, even if it finds a use allegation to be true, the robbery is of the second degree (*People* v. *Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905]) and the judgment, therefore, as it appears in the record, is correct.

automatic, and pursued the men outside. There were two cars parked outside; the robbers were preparing to make their escape in a blue-green vehicle. Martin positioned himself beside the other parked vehicle, using it as a shield, and told the men that "[i]f you make one move, I will blow your head off," and tried to fire at the driver of the car. Martin pulled the trigger of his gun, but it misfired. The two robbers drove off. Martin ran after them while attempting to fire his weapon, and saw the license number of the vehicle. He said that the number was 468 ABC. He fired shots at the departing vehicle, and hit it, but was unsuccessful in stopping it.

Martin called the police, and gave them the license number of the car. He also described the suspect with the gun as a male Caucasian, blondish grey hair, 5'9", 195, 40 to 45 years of age, with soft speech and a medium complexion. Several days after the robbery, Martin was shown six photographs, including one of defendant. He selected two of the photographs, including that of defendant, but stated he could not be sure of identification until he saw the subjects of the photographs personally. He never saw a line-up. However, at both the preliminary hearing and at the trial he identified defendant as the gunman.

Shortly before midnight of October 14, 1974, Oxnard Police Officer Coates arrested defendant at an apartment in Oxnard and defendant's vehicle, a green 1966 Plymouth bearing the license plate 468 ABC, was impounded. At the time of arrest, the officer took car keys from defendant's pants. One of these keys fit the door of the Plymouth. While defendant was being transported from the Ventura County jail to Los Angeles the next day, he told the transporting police officer, Dickey, that the 1966 Plymouth was his, a recent purchase.

Defendant, who testified on his own behalf, denied commission of the robbery. He stated that he had spent the early afternoon hours of October 14, 1974, in a bar in Oxnard known as "The Bull Ring," some 50 miles from Sylmar. Defendant stated that his car was either in his presence on the date of the robbery or parked in front of his apartment in the Oxnard area. Two witnesses, Mr. and Mrs. Blas Saucedo, testified that they saw defendant at this bar on that day during the early afternoon.

■ Defendant contends, on this appeal, that the trial court erred in excluding certain evidence on the ground that it was inadmissible hearsay. The evidence was a copy of a police report of a telephone call

received by the police from Mary Nitto, a neighbor of the victim, Martin, shortly after the robbery. In the report, Mary Nitto was purported to have stated that the license number of the robbers' car was not 468 ABC, as reported by Martin, but either 416 or 614. Following an Evidence Code section 402 evidence admissibility hearing outside the presence of the jury, the trial court excluded the evidence. The defense counsel's argument for its admission was two-fold: first, that the evidence was nonhearsay since it was not being offered for the truth of the matter asserted, but simply to show that the report of another license number had been made; second, that even if hearsay, the police report was admissible under the official-record exception to the hearsay rule established by Evidence Code section 1280.

We conclude that the trial court's ruling was proper. If offered for the *nonhearsay* purpose indicated, the evidence was inadmissible on the ground of *irrelevancy*. The evidence was obviously being offered by the defense to prove that the victim, Martin, was mistaken in his testimony as to the license number of the get-away car and that the license number of that car was one of the numbers contained in the police report as emanating from Mary Nitto. The document was thus being proffered in evidence to prove the truth of the matter stated therein. Thus, the statement Nitto made to the police was hearsay and inadmissible unless it qualified under one of the exceptions to the hearsay rule.

Defendant contends that it should have been admitted under the official-record exception to the hearsay rule set forth in Evidence Code section 1280. Section 1280 provides as follows: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made by and within the scope of duty of a public employee; [¶] (b) The writing was made at or near the time of the act, condition, or event; and [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

In ruling that the police report was inadmissible, the trial court relied upon the ground that the requirement of trustworthiness had not been established for the official-record hearsay exception. The trustworthiness requirement for this exception to the hearsay rule is established by a showing that the written report is based upon the observations of public employees who have a *duty* to observe the facts and report and record them correctly. "Thus, a public employee's writing, which is based upon information obtained from persons who are not public employees, is

generally excluded because the 'sources of information' are not 'such as to indicate its trustworthiness' . . . ." (Jefferson, Cal. Evidence Benchbook (1972) § 5.1, p. 96; *Behr* v. *County of Santa Cruz* (1959) 172 Cal.App.2d 697 [342 ˉP.2d 987].) In the instant case, Mary Nitto, the source of the information, was not a public employee with any duty either to observe facts correctly or to report her observations accurately to the police department. The trial court was correct, therefore, in ruling that the proffered police report was inadmissible hearsay.

 Defendant also contends that the trial court erred when it refused to give an instruction on reasonable doubt requested by defendant. This instruction provided: "The burden is on the People to prove beyond a reasonable doubt, not only that the offenses were committed as alleged in the Information, but also that the defendant is the person who committed them. Therefore, you must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If the circumstances of the identification are not convincing beyond a reasonable doubt, you must find the defendant not guilty."

The principal issue in the present case was that of identification of defendant by the victim, Martin. It is understandable that the defense would, under these circumstances, seek to emphasize the importance of the identification testimony and its relation to "reasonable doubt."

"Section 1096a of the Penal Code declares that when the statutory definition of reasonable doubt is given (see Pen. Code, § 1096), no other instruction need be given defining reasonable doubt. Despite this section, a defendant, upon proper request therefor, has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered. . . . *A defendant is entitled to an instruction relating particular facts to any legal issue.* [Citations.]" (*People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847].) (Italics added.)

Under this principle of *Sears,* it has been held to be error for the trial court to refuse to give a defendant's requested instruction relating identification to reasonable doubt. (*People* v. *Guzman* (1975) 47 Cal.App.3d 380 [121 Cal.Rptr. 69].) But whether such error constitutes reversible error depends upon such matters as whether the case is a close one as to defendant's identification, whether there is an accumulation of

errors, and the nature of other instructions given in the case. In *Guzman,* the court remarked: "If said error stood alone we would hold it nonprejudicial in the light of the giving of general instructions on the credibility of witnesses (CALJIC No. 2.20) which cover many of the matters which might affect the validity of a witness' identification testimony, and the last paragraph of CALJIC No. 4.50 on alibi, which expressly requires proof beyond a reasonable doubt as to defendant's presence at the scene of the crime (basically the same issue as is involved in identification). [Citation.]" (*Guzman, supra,* 47 Cal.App.3d 380, at p. 388.) In *People* v. *Gomez* (1972) 24 Cal.App.3d 486 [100 Cal.Rptr. 896], the court conceded that the case before it was a "close case" on the question of identification, but held that the error of the trial court in failing to give a requested instruction on reasonable doubt as applied to the identification of defendant was nonprejudicial in view of other instructions that were given.

In the instant case, the jury was instructed generally concerning reasonable doubt (CALJIC No. 2.90) and also about alibi, CALJIC No. 4.50, which provides: "The defendant in this case has introduced evidence tending to show that he was not present at the time and place of the commission of the alleged offense for which he is here on trial. If, after a consideration of all the evidence, you have a *reasonable doubt* that the defendant was present at the time the crime was committed, he is entitled to an acquittal." (Italics added.)

It is to be noted that the alibi instruction emphasizes the importance of reasonable doubt, and that alibi and identification are sides of the same coin. We conclude that the jury was adequately instructed about reasonable doubt.

■ Defendant next contends that the prosecutor was guilty of improper conduct because of certain comments he made during final argument to the jury. The comments complained of employed the use, by the prosecutor, of the words "believe" and "feel," *i.e.,* "[i]f you believe [defendant] is guilty," "if you feel he is guilty," etc. The objection to them by defendant was premised on the contention that the jury might have concluded from these comments that they had the right to decide the case on some subjective basis, rather than upon the evidence. The record before us shows that the defense objected to the prosecutor's remarks after the jury was out, at which time it was impossible to correct the error, if any, caused by the prosecutor.

The record also shows that the prosecutor told the jury "[i]f you believe he is guilty it must be because of the evidence." Placing the prosecutor's employment of "believe" and "feel" in the context of the entire argument, the error, if any, was de minimis, and not the clear and flagrant abuse which constitutes reversible error.

■ Defendant also argues that the evidence adduced below was insufficient to support the judgment of conviction; defendant attacks the identification testimony of the victim, Martin. It is elementary that the credibility of witnesses is for the jury to decide, and that the standard of appellate review of such testimony is whether the evidence was substantial, not whether it could have produced a different result. In addition to the victim's testimony identifying defendant, there is the evidence with respect to the license number and the fairly accurate identification of the vehicle which bore it, coinciding with the physical description of defendant's vehicle. The case is certainly one marked by directly conflicting evidence concerning defendant's whereabouts on the day of the robbery, and was a close case in that sense. But the jury obviously chose to believe the victim, Martin, and that was within their province.

■ Finally, defendant contends that the trial court erred when it denied him a new trial on the basis of newly discovered evidence. The principles involved on this issue are summarized in *People* v. *Beyea* (1974) 38 Cal.App.3d 176, 202 [113 Cal.Rptr. 254], wherein the court explained that the trial court, in the exercise of its discretion to grant or deny a motion for a new trial, should consider the following factors: "1) that the evidence, and not merely its materiality, is newly discovered; 2) that the evidence is not merely cumulative; 3) that it would render a different result probable on retrial of the cause; 4) that the party could not with reasonable diligence have discovered and produced it at trial; and 5) that these facts have been shown by the best evidence of which the case admits [citation]."

The "newly discovered evidence" offered by defendant in the instant case was the testimony of Mary Nitto, the neighbor of the victim, Martin, who witnessed the escape of the robbers on October 14, 1974. The trial court denied defendant's motion for a new trial after conducting a hearing at which Mary Nitto testified as a witness. The basis for denial of the new trial motion was predicated upon two grounds: (1) a determination that the evidence would not render a different result probable on

retrial, and (2) that the witness Nitto could have been produced at trial with the exercise of reasonable diligence by the defense.

According to an affidavit of a police officer presented in opposition to defendant's motion for a new trial, Mary Nitto was present in the courtroom at the preliminary hearing and told the affiant that defendant was one of the escaping men she saw at the Sylmar liquor store on October 14, 1974. She was not, however, called by the prosecution to testify at the preliminary hearing. Between that time and the commencement of trial, the witness left the Sylmar area and went to the San Joaquin area; the prosecution made no effort to locate her until the trial judge insisted that she be produced prior to his ruling on the motion for a new trial. It appears that this witness could have been located through her mother prior to trial, but neither side made any effort to do so.

When the witness finally was called to testify at the hearing on defendant's motion for a new trial, her testimony was essentially corroborative of the victim's testimony. She described both the defendant and the automobile in terms similar to those given by Martin. Furthermore, she had been shown photographs by investigating officers prior to the preliminary hearing and had selected defendant's picture as the escaping gunman. She further testified that she saw only a partial license number, including the numbers four and six, but was uncertain of their order; she mentioned that the letters were "ABC." Under these circumstances, it appeared doubtful to the trial judge that her testimony could have been favorable to the defendant at a retrial. We agree, and conclude that his ruling denying a new trial was correct.

The judgment appealed from is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.