[No. F044982. Fifth Dist. Jan. 13, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ALLEN THOMAS AYERS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

COUNSEL

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, and Charles A. French, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**BUCKLEY, Acting P. J.—**

## INTRODUCTION AND FACTUAL OVERVIEW

At approximately 11:00 p.m. on August 13, 2003, defendant Allen Thomas Ayers visited Marisa M. at her apartment. Marisa and defendant had been living together "on and off" for the past four years and she is the mother of defendant's two youngest children. They began arguing. Defendant repeatedly struck Marisa on the face and head. During the week following the incident,

Marisa told police officers and others that in addition to striking her, defendant also forced her into a bathroom where he hit her, choked her, tied her up, held a knife to her throat and threatened to kill her (the August incident).

It was decided during the early morning hours of August 14 that defendant would take Marisa and their children to the coast. On the way, defendant stopped to purchase cigarettes. After he left the car, Marisa ran into a nearby store and asked someone to call 911. An unidentified store clerk telephoned 911 for emergency assistance; the clerk's conversation with the dispatcher was recorded (the 911 call). The police arrived soon thereafter. After taking Marisa's statement, the responding officer took photos of her face and gave her some pamphlets describing the services available from the Alliance Against Family Violence (AAFV), an organization that assists abused women. Marisa telephoned the AAFV hotline later that day. She went to the police station on the following day so that more photos could be taken of her injuries. She signed an application for a restraining order in which she described the August incident and an incident that had occurred in July 2003 during which defendant grabbed her around the neck, choked her and forced her into a closet. On August 19, 2003, Marisa visited a shelter for abused women that is operated by AAFV, where she spoke with a case manager.

As a result of the August incident, an information was filed charging defendant with spousal battery, making terrorist threats and false imprisonment; deadly weapon use enhancement allegations were attached to the battery and threat counts.

Jury trial was held. At that time, Marisa was on "very friendly" terms with defendant. Although she testified that defendant had repeatedly struck her on the face, she recanted most of the other statements she had made concerning the August incident and the uncharged prior abuse. She blamed herself for the August incident, testifying that she had been drinking and was the initial aggressor. Defendant testified that he slapped her in the face a few times because she had pushed and slapped him. Over defense objections, the court admitted two records maintained by AAFV—a portion of a crisis intervention log and a client intake data form (the AAFV forms), the audiotape and transcript of the 911 call and expert testimony about battered women's syndrome (BWS).

Defendant was found guilty of spousal battery. (Pen. Code, § 273.5, subd. (a).) He was acquitted of the other two counts and the special

allegations were found not true. He was sentenced to the middle term of three years' imprisonment.

Defendant challenges the spousal battery conviction on several grounds, arguing inter alia: (1) the AAFV forms were not admissible under the business records exception to the hearsay rule to prove the circumstances of the August incident; and (2) the trial court erred by denying his request for modification of CALJIC No. 9.35 to specify that the corporal injury must be "unlawful." In the published portion of this opinion, we first demonstrate that while the AAFV forms were not admissible to prove the truth of their contents because they contain two layers of hearsay and there is not an applicable exception to the hearsay rule for each layer, defendant was not prejudiced by entry of the AAFV forms into evidence. Next, we explain that refusal to modify CALJIC No. 9.35 did not constitute instruction error and, in any event, the asserted defect in the jury charge is harmless beyond a reasonable doubt. Defendant's other challenges to the conviction are rejected in the unpublished portion of this opinion. We will affirm.

## DISCUSSION

I.  *Although the AAFV forms should not have been admitted under the business records exception to the hearsay rule to prove the circumstances of the August incident, the resulting error was harmless.*

### A.  *Factual Background*

Sarita Esqueda is employed by AAFV as a shelter coordinator. She testified out of the presence of the jury that when Marisa telephoned the AAFV hotline on August 14, the contents of her conversation with an AAFV employee were recorded in a document known as the crisis intervention log. When Marisa visited the shelter on August 19, an AAFV case manager interviewed her and completed an intake form. The AAFV forms were completed using information provided by Marisa and they reflect statements Marisa made about the August incident.

The prosecutor moved to permit the AAFV forms to be admitted into evidence. Defense counsel objected, arguing that the documents were not properly authenticated, lacked foundation and "are also double hearsay. Not only is the document hearsay, but then within the document there are hearsay statements from [Marisa]." The court ordered the AAFV forms excised to remove references to defendant's possible alcohol or drug use and it required

the prosecutor to establish that Esqueda was AAFV's custodian of record. "[A]ssuming that [the prosecutor] can lay that foundation, . . . then we'll admit those exhibits with those changes."

Thereafter, Esqueda testified on direct examination that she was the custodian of records for AAFV. She explained that the two AAFV forms are completed by AAFV employees using information that the client provides. The AAFV forms are maintained in AAFV files and are relied on by AAFV employees.

Defense counsel declined to cross-examine Esqueda but renewed her "objection. Lack of foundation." The court overruled the objection and received the AAFV forms into evidence.

A short while later, the court informed counsel that the AAFV forms would not be shown to jurors or provided to them during deliberations because of difficulties it was experiencing in redacting the AAFV forms.

The prosecutor summarized a portion of the crisis intervention log during her closing argument, as follows:

"[I]n [the AAFV forms], . . . she actually outlines all the abuse that the defendant has been responsible for. But I would ask that you look at People's Exhibit No. 34 which is the crisis intervention log. And this is dated August the 14th at about 9:55 in the morning.

"Okay. Now, this is after—based upon the testimony, after she spoke to law enforcement, after they gave her the pamphlets regarding battered women. This shows you that she called the hotline.

"And on page 2 of this report, she goes on—which is, once again, look at her actions. She goes and she says beat her for three or four hours in the bathroom. Black eyes. Tied her up. Tore up a dress to tie her with. Put a knife to her throat. Wants answers about who she is with . . . .

". . . So we know, based upon the evidence, that the defendant is guilty of Count 1, which is spousal abuse . . . ."

### B. *Discussion*

■ The AAFV forms were admitted under the business records exception to the hearsay rule. Evidence Code section 1271[1] provides that evidence of a writing made as the record of an act, condition or event is not made inadmissible by the hearsay rule if the following four conditions are met: (1) the writing was made in the regular course of a business; (2) it was made at or near the time of the event; (3) the custodian or another qualified witness testifies about the writing's identity and mode of preparation; and (4) "[t]he sources of information and method and time of preparation were such as to indicate its trustworthiness." (§ 1271, subd. (d).) "The proponent of the evidence has the burden of establishing trustworthiness." (*People v. Beeler* (1995) 9 Cal.4th 953, 978 [39 Cal.Rptr.2d 607, 891 P.2d 153].)

Defendant argues that admission of the AAFV forms to prove the truth of the contents asserted therein was erroneous because the AAFV forms did not qualify as business records. Defendant reasons that the employees who completed the AAFV forms did not have knowledge of the facts contained therein from personal observation. Rather, the contents were derived from hearsay statements made by Marisa, who did not have an official duty to observe and report the relevant facts. We agree. The AAFV forms are analogous to police reports, probation reports, psychiatric evaluations and emergency call logs, none of which qualify as business records because they contain hearsay statements made by participants and bystanders and inadmissible opinions and conclusions. (*Kramer v. Barnes* (1963) 212 Cal.App.2d 440, 446 [27 Cal.Rptr. 895] [police reports]; *People v. Hernandez* (1997) 55 Cal.App.4th 225, 239–240 [63 Cal.Rptr.2d 769] [search result from database containing information derived from police reports]; *People v. Campos* (1995) 32 Cal.App.4th 304, 309–310 [38 Cal.Rptr.2d 113] [probation report]; *People v. Reyes* (1974) 12 Cal.3d 486, 502–503 [116 Cal.Rptr. 217, 526 P.2d 225] [psychiatric evaluation]; *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1203–1207 [122 Cal.Rptr.2d 890] [911 dispatch log] (*Alvarez*).)[2]

---

[1] Unless otherwise specified, all statutory references are to the Evidence Code.

[2] We summarily reject the Attorney General's contention that this issue was not preserved for appellate review. Defense counsel argued that the AAFV forms constitute "double hearsay." The trial court expressly ruled that the AAFV forms would be admitted "with those objections." The objections to which the trial court referred include the hearsay point that is advanced on appeal. Defense counsel did not withdraw her hearsay objection after the court agreed to redact references to defendant's alcohol and drug use. Thus, the waiver argument fails for lack of record support.

The analytical flaw in the trial court's reasoning was its failure to recognize and address the fact that the AAFV forms contained multiple layers of hearsay. "When multiple hearsay is offered, an exception for *each* level of hearsay must be found in order for the evidence to be admissible. (Evid. Code, § 1201.)" (*Alvarez, supra,* 100 Cal.App.4th at p. 1205.) Marisa's statements to the AAFV employee was the first hearsay layer and the employee's recordation of those statements was the second hearsay layer. Esqueda's testimony sufficiently established that the employees who recorded the information were obligated to do so in an accurate manner. However, Esqueda's testimony did not establish the trustworthiness of Marisa's statements to the AAFV employees. It is undisputed that Marisa was not under an official duty to accurately report information. Therefore, Esqueda did not and could not lay a foundation sufficient to permit the AAFV forms to be admitted for the truth of the matters recorded therein.

The Attorney General's perfunctory argument that the AAFV forms were properly admitted as business records because "Esqueda expressly testified that case managers go over the forms with clients such as Marisa and have the clients sign them . . . , the clear inference being that the client makes sure that the case manager recorded the information accurately," suffers from the same analytical flaw. It is not the accuracy and trustworthiness of the employees' recordation that is being challenged, it is the accuracy and trustworthiness of Marisa, whose remarks were summarized and recorded by the employees in the AAFV forms.

*Alvarez, supra,* 100 Cal.App.4th 1190, which is relied on by defendant, cogently explains the applicable principle. There, the appellate court upheld the trial court's refusal to admit 911 dispatch logs under the business records or the official records exceptions to the hearsay rule. The reviewing court explained that the custodian of records could lay a foundation sufficient to prove that the 911 calls had been placed. "However, that testimony did not and could not lay a sufficient foundation to permit the records to be offered for the truth of the matter asserted in the calls by the individuals who telephoned the LAPD because those individuals were not under a duty to accurately report information. [Citation.]" (*Id.* at p. 1205.)

*Alvarez* found *People v. Baeske* (1976) 58 Cal.App.3d 775 [130 Cal.Rptr. 35] (*Baeske*) illustrative. *Baeske* upheld the exclusion of a police report of a telephone call that had been received by the police from a neighbor of the victim as inadmissible hearsay. The *Baeske* court reasoned that the source of the information was not a public employee with a duty either to observe facts correctly or to report her observations accurately to the police department. Therefore, the trustworthiness requirement had not been satisfied. (*Baeske, supra,* 58 Cal.App.3d at pp. 780–781.)

■ By a parity of reasoning, we conclude that the AAFV forms were only admissible to establish that Marisa had telephoned the hotline on August 14 and that she had visited the shelter on August 19. Admission of the AAFV forms to prove the circumstances of the August incident was legal error. When offered for this purpose, the AAFV forms were inadmissible multiple hearsay. (*Alvarez, supra*, 100 Cal.App.4th at pp. 1205, 1207.)

However, admission of the AAFV forms did not cause a miscarriage of justice. First, the jury did not see the AAFV forms and the prosecutor only briefly referenced this evidence during her closing argument. Second, the content of the AAFV forms was largely cumulative to statements Marisa gave to police officers immediately following the August incident. Third, there was overwhelming evidence proving that defendant was guilty of spousal battery. He admitted during his testimony that he had repeatedly struck Marisa on the face. Photographs were admitted demonstrating her injuries. Defendant's claim that he inflicted the injuries in self-defense was not credible. Finally, the jury already demonstrated amazing lenity when it acquitted defendant of the false imprisonment and terrorist threat counts and found the deadly weapon use enhancements not true. Given the strength of the evidence against him, it is not reasonably probable that a result *even* more favorable to defendant would have been reached if the AAFV forms had been excluded. (*People v. Campos, supra*, 32 Cal.App.4th at pp. 308–309 [erroneous admission of probation report was nonprejudicial].)

II. *Refusal to modify CALJIC No. 9.35 did not result in a defective jury charge; in any event, the asserted flaw is harmless beyond a reasonable doubt.*

CALJIC No. 9.35 is the standard instruction on felony spousal battery. In relevant part, this instruction specifies that the application of force must have been "willfully inflict[ed]." CALJIC No. 16.140.1 is the standard instruction on the lesser included offense of misdemeanor spousal battery. In relevant part, this instruction states that the application of force must have been both willful and unlawful. A bracketed portion of this instruction provides that "[t]he use of force or violence is not unlawful when done in lawful [self-defense] . . . . The burden is on the People to prove that the use of force or violence was not in lawful [self-defense] . . . . If you have a reasonable doubt that the use of force or violence was unlawful, you must find the defendant not guilty." Both CALJIC No. 9.35 and CALJIC No. 16.140.1 were included in the jury charge. The jury was given the bracketed portion of CALJIC No. 16.140.1. When the court instructed the jury, it first read CALJIC No. 9.35, followed by CALJIC No. 16.140.1 and then CALJIC No. 9.35.1. Immediately thereafter, the court instructed on self-defense with CALJIC Nos. 5.30, 5.50, 5.51, 5.52 and 5.53.

During the instructional conference, defense counsel had asked the court to modify CALJIC No. 9.35 to specify that the application of force must have been both willful and unlawful, mirroring CALJIC No. 16.140.1. Counsel argued, "[T]he word unlawfully requires the prosecution to prove beyond a reasonable doubt that the crime was not self-defense. So by deleting the word 'unlawfully,' it changes the burden of proof." The trial court decided that it would give CALJIC No. 9.35 in its standard form.

Defendant argues that the trial court erred by refusing to modify CALJIC No. 9.35 to specify that the application of force must have been "unlawful" as well as willful. He contends, "[b]ecause the evidence was sufficient to raise a reasonable doubt whether [he] acted in self-defense, it was incumbent upon the trial court to instruct the jury that the burden was on the People to prove that [his] use of force was unlawful," positing that the jury could have attached significance to the difference between CALJIC No. 9.35 and CALJIC No. 16.140.1.

■ This argument fails because it violates the established precept that the adequacy of the jury charge must be determined from the entirety of the charge, not from a single instruction. (*People v. Frye* (1998) 18 Cal.4th 894, 957 [77 Cal.Rptr.2d 25, 959 P.2d 183].) Jury instructions must be read together and understood in context as presented to the jury. (*People v. Rhodes* (1971) 21 Cal.App.3d 10, 20 [98 Cal.Rptr. 249].) The jury was given CALJIC No. 1.01, which instructs it not to single out any individual instruction and ignore others. ■ Jurors are presumed to be intelligent people, capable of understanding and correlating all instructions. (*People v. Mills* (1991) 1 Cal.App.4th 898, 918 [2 Cal.Rptr.2d 614].) The jury was instructed in the language of CALJIC No. 2.90 that the People bore the burden of proving guilt beyond a reasonable doubt and it was instructed on the principles of self-defense with CALJIC Nos. 5.30 and 5.50 to 5.53. Sensible jurors would have understood that the self-defense instructions applied equally to all of the charges that were based upon defendant's use of physical force and that the People bore the burden of proof. It is not reasonably possible that the failure to add the word "unlawful" to CALJIC No. 9.35 either misled the jury into believing that the self-defense instructions did not apply to the spousal battery charge or confused the jurors about the People's burden of proof.

■ We mention that defendant would have been entitled, upon request, to an instruction stating that, " '[i]t is not necessary for defendant to establish self-defense by evidence sufficient to satisfy the jury that the self-defense was true, but if the evidence is sufficient to raise a reasonable doubt as to whether the defendant was justified, then he is entitled to an acquittal.' " (*People v. Adrian* (1982) 135 Cal.App.3d 335, 337 [185 Cal.Rptr. 506] (*Adrian*).) This instruction is commonly known as the *Sanchez* instruction because the California Supreme Court ruled in *People v. Sanchez* (1947) 30 Cal.2d 560

[184 P.2d 673] (*Sanchez*), that it is erroneous to refuse a request for such a instruction. *Adrian* held that the instruction also applied to nonhomicidal assaultive crimes, ruling that a *Sanchez* instruction "must be given upon request whenever the claim of self-defense has been properly tendered and the evidence warrants submitting the issue to the jury." (*Adrian, supra*, 135 Cal.App.3d at p. 336.) Yet, under the circumstances presented here, defendant's request for addition of the word "unlawfully" to CALJIC No. 9.35 cannot reasonably be construed as tantamount to a request for a *Sanchez* instruction. Existing authority does not hold that there exists a sua sponte obligation to give a *Sanchez* instruction whenever a self-defense claim is raised and we decline to impose such a burden on the trial courts.

Furthermore, defendant was not prejudiced by the refusal to modify CALJIC No. 9.35 or by the absence of a *Sanchez* instruction, even when the omission is assessed under the stringent federal constitutional standard of harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]; see *People v. Flood* (1998) 18 Cal.4th 470, 502–503 [76 Cal.Rptr.2d 180, 957 P.2d 869].) Both *Sanchez* and *Adrian* found the instructional omission harmless because other instructions adequately pinpointed the defense and the burden of proof. (*Sanchez, supra*, 30 Cal.2d at pp. 571–572; *Adrian, supra*, 135 Cal.App.3d at pp. 341–342.) The same is true in this case. In addition to giving the standard instructions on self-defense and the burden of proof discussed above, defense counsel was permitted to argue without objection that the prosecutor has the burden of proving beyond a reasonable doubt that "what happened was not self-defense." Even assuming error, there is no reasonable likelihood that under these facts the jury misapplied the law. (See *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 112 S.Ct. 475].) Additionally, as previously discussed, *ante,* in part I, defendant's claim that he repeatedly struck Marisa in self-defense is not credible and there is overwhelming proof that he is guilty of spousal abuse. It is not even remotely possible that the jury also would have acquitted him of spousal battery if the word "unlawfully" had been added to CALJIC No. 9.35 or if a *Sanchez* instruction had been given. Thus, any possible instructional error is harmless.[3]

III., IV.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3] If defendant had raised an ineffective assistance claim based on defense counsel's failure to request a *Sanchez* instruction, it would not have succeeded because defendant would not have been able to establish prejudice. (*In re Jackson* (1992) 3 Cal.4th 578, 604 [11 Cal.Rptr.2d 531, 835 P.2d 371] [when ineffective assistance claim can be resolved solely on lack of prejudice, reviewing court need not determine whether counsel's performance was deficient].)

[*]See footnote, *ante*, page 988.

## DISPOSITION

The judgment is affirmed.

Cornell, J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 13, 2005.