Filed 3/26/14  P. v. Keokongchack CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PISA KEOKONGCHACK,<br><br>    Defendant and Appellant. | C069397<br><br>(Super. Ct. Nos. 09F03859 &<br>09M09180) |

After he was pulled over for a traffic stop, defendant Pisa Keokongchack ran away and abandoned the car.  The officer searched the car and found several bags of marijuana, a scale, boxes of sandwich baggies, a handgun and ammunition.  A jury convicted defendant of possessing marijuana for sale, unlawfully transporting marijuana, unlawfully carrying a concealed firearm, unlawfully carrying a loaded firearm in a public place, being a felon in possession of a firearm and ammunition, and resisting arrest.  The

1

trial court sentenced defendant, staying sentence on all but four years in prison, and imposed various fines and fees, including a $500 criminal laboratory analysis fee.

Defendant now contends (1) the trial court erred in admitting evidence of a 911 call recorded the day before defendant was pulled over, because the recording did not qualify under the spontaneous declaration exception to the hearsay rule and it violated his Sixth Amendment right to confront witnesses testifying against him; (2) the trial court erred in admitting evidence about an incident seven years before trial in which defendant evaded arrest on foot, leaving behind a car with a large quantity of marijuana, because the details of the earlier crime were more prejudicial than probative; (3) the cumulative prejudice that resulted from the trial court's errors caused the trial to be fundamentally unfair; and (4) the trial court erred in imposing a $500 criminal laboratory analysis fee.

We conclude (1) the trial court did not abuse its discretion in admitting evidence of the 911 call, and the evidence did not violate defendant's right of confrontation; (2) the trial court did not abuse its discretion in admitting the prior act evidence; (3) defendant's claim of cumulative prejudice lacks merit; and (4) the judgment must be modified to impose the correct criminal laboratory analysis fee.

We will modify the judgment to impose a criminal laboratory analysis fee of $100 rather than $500, stay $50 of that fee pursuant to Penal Code section 654, and affirm the judgment as modified.

BACKGROUND

Defendant was driving a maroon Chevrolet Impala when an officer pulled him over for expired registration tags on the night of March 14, 2009, near the driveway of 3313 Altos Avenue in Sacramento. Defendant gave the officer a false name and birth date, but when the officer said defendant's appearance did not match the record for the name defendant provided, defendant gave his real name, said he did not have a driver's license, and asked if the car would be towed. The officer smelled marijuana and returned

2

to her car to call for back-up. Defendant ran away, locking the car remotely as he fled. The officer pursued him but defendant managed to escape.

The officer searched the vehicle. The glove compartment contained a traffic citation with the name defendant initially gave as his own, along with paperwork bearing defendant's actual name. The trunk contained several bags of marijuana, a scale, two open boxes of sandwich baggies, a .45 caliber handgun and ammunition.

The marijuana weighed nearly 3,000 grams. Based on the quantity of the marijuana, and the fact that it was accompanied by a digital scale and the kind of baggies used to package marijuana for sale, the officer concluded the marijuana was possessed for sale. At trial it was estimated that the marijuana was worth about $19,000 if purchased in bulk but up to $100,000 or more if packaged and sold on the street.

Six months later, in response to an anonymous tip, police found defendant in an apartment hiding under a mattress. He resisted arrest, even after a police dog scratched and bit him.

During trial, the jury heard a 911 call recorded on March 13, 2009, the day before the traffic stop, from a woman identifying herself only as Jessica. Jessica reported that she had just seen a man with long hair load two shopping bags full of marijuana into the trunk of a "red Chevy Impala" parked in front of 3307 Altos Avenue. The next day, when defendant was pulled over driving a maroon Chevrolet Impala, his hair was long and he reported his address as 3307 Altos Avenue. Jessica did not testify at trial.

Additional facts are referenced in the discussion where relevant to the contentions on appeal.

The jury convicted defendant of possessing marijuana for sale (Health & Saf. Code, § 11359 -- count one), unlawfully transporting marijuana (Health & Saf. Code, § 11360, subd. (a) -- count two), unlawfully carrying a concealed firearm (former Pen. Code, § 12025, subd. (b)(6) -- count three), unlawfully carrying a loaded firearm in a public place (former Pen. Code, § 12031, subd. (a)(2)(F) -- count four), being a felon in

3

possession of a firearm (former Pen. Code, § 12021, subd. (a)(1)) -- count five), resisting arrest (Pen. Code, § 148, subd. (a)(1) -- counts six through nine), and being a felon in possession of ammunition (former Pen. Code, § 12316, subd. (b)(1) -- count ten). In addition, the jury found that defendant was armed in the commission of counts one and two.

The trial court sentenced defendant, staying all but four years in prison, and imposed various fines and fees, including a $500 criminal laboratory analysis fee.

DISCUSSION

I

Defendant contends the trial court erred in admitting evidence of Jessica's 911 call, because (A) the recording did not qualify under the spontaneous declaration exception to the hearsay rule, and (B) it violated his Sixth Amendment right to confront witnesses testifying against him.

A

Defendant first contends the trial court erred in admitting the 911 recording pursuant to Evidence Code section 1240, the spontaneous declaration exception to the hearsay rule. Defendant objected to admission of the evidence at trial, asserting that it did not qualify as a spontaneous declaration because Jessica was "calm and collected" and not "hysterical or excited."

Evidence Code section 1240 provides that a statement is not made inadmissible by the hearsay rule if it (a) purports to narrate, describe or explain an act, condition or event perceived by the declarant, and (b) the statement was made spontaneously while the declarant was under the stress of excitement caused by such perception. Thus, to meet the standards for a spontaneous declaration, " '(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate

4

and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' [Citations.]" (*People v. Poggi* (1988) 45 Cal.3d 306, 318, quoting *Showalter v. Western Pacific R.R. Co.* (1940) 16 Cal.2d 460, 468.) Whether the requirements are satisfied is a question vested in the discretion of the trial court, and the fact that a declarant "has become calm enough to speak coherently . . . is not inconsistent with spontaneity." (*Poggi, supra,* 45 Cal.3d at pp. 318-319.)

Here, the trial court identified and weighed the various factors, noting that the declarant said "I just saw them load" the marijuana. The trial court ruled that Jessica did not have time to misrepresent or contrive before making the phone call. Defendant acknowledges numerous cases in which the spontaneous declaration exception applied to a 911 call, but he claims callers in most instances were startled by an injury or the discovery of a lifeless body. Defendant argues Jessica could not have been startled to see drug activity in her neighborhood because she told the 911 operator that her neighborhood was "trying to get back to normal" and she identified the packages as marijuana from "across the way."

There was no evidence about what Jessica may have meant by "get[ting] back to normal," but even if Jessica was accustomed to seeing marijuana, a reasonable person would be surprised to see the loading of what Jessica described as two shopping bags full of marijuana in the middle of the day. Such an apparent criminal enterprise might alarm a person accustomed to seeing the impact of illegal drugs in her neighborhood even more than someone less familiar. There was sufficient evidence to support the trial court's conclusion that Jessica was startled by what she saw and reported it promptly enough to make her statement reliable. The trial court did not abuse its discretion in admitting evidence of the 911 call.

B

Defendant argues that even if Jessica's statement met the standards for the spontaneous declaration exception, it nonetheless violated his Sixth Amendment right to confront witnesses testifying against him.

In *People v. Cage* (2007) 40 Cal.4th 965, the California Supreme Court discussed the United States Supreme Court holdings in *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177] and *Davis v. Washington* (2006) 547 U.S. 813 [165 L.Ed.2d 224], distilling the following principles: (1) the confrontation clause applies only to testimonial statements, which are "out-of-court analogs, in purpose and form, of the testimony given by witnesses at trial"; (2) to be testimonial, a statement must have occurred "under circumstances that imparted, to some degree, the formality and solemnity characteristic of testimony"; (3) the statement must have been given and taken primarily to "establish or prove some past fact for possible use in a criminal trial"; (4) the primary purpose for giving and taking the statement must be determined objectively; (5) sufficient formality and solemnity are present when, "in a nonemergency situation, one responds to questioning by law enforcement officials, where deliberate falsehoods might be criminal offenses"; and (6) statements elicited by law enforcement are not testimonial if the primary purpose of giving and taking them is "to deal with a contemporaneous emergency, rather than to produce evidence about past events for possible use at a criminal trial." (*Cage, supra,* 40 Cal.4th at p. 984, fn. omitted.)

Later, in *People v. Blacksher* (2011) 52 Cal.4th 769, at page 814 (*Blacksher*), the California Supreme Court discussed another case, *Michigan v. Bryant* (2011) 562 U.S. ___ [179 L.Ed.2d 93], in which the United States Supreme Court noted that when a statement is made during an ongoing emergency, courts may presume it to be significantly less likely to have been fabricated and, for the same reason, less likely to need to be "subject to the crucible of cross-examination." (*Id.* at p. ___ [179 L.Ed.2d at pp. 109-110].)

6

Operators responding to 911 calls are generally determining an appropriate response to an emergency as opposed to conducting an interrogation in contemplation of a future prosecution. (*People v. Corella* (2004) 122 Cal.App.4th 461, 468.) Even if the statements provided in a 911 call are ultimately used in a criminal prosecution, they generally are not "testimonial" because they are made without reflection or deliberation. (*Id*. at 469; *People v. Banos* (2009) 178 Cal.App.4th 483, 497 [911 call not testimonial]; *People v. Brenn* (2007) 152 Cal.App.4th 166, 177 [same].)

Defendant claims 911 calls are testimonial unless "the caller is in need of immediate urgent help" and is not simply reporting a crime. He cites two cases that do not mention the confrontation clause. In *Alvarez v. Jacmar Pacific Pizza Corp*. (2002) 100 Cal.App.4th 1190, the plaintiff moved to admit a log of 911 calls, which had been made by employees of a corporate defendant, in an effort to prove the defendant knew about dangerous conditions on its premises. (*Id.* at p. 1204.) The Court of Appeal held that the trial court did not abuse its discretion in finding inadequate indicia for admitting the log as a business record. (*Id*. at p. 1207.) And in *People v. Baeske* (1976) 58 Cal.App.3d 775, the trial court excluded a police record of a vehicle license number reported by a crime witness, finding there was insufficient evidence that the call fit the "official-record" exception asserted by the defendant. (*Id*. at 780-781.) The Court of Appeal held the exclusion was appropriate. (*Id*. at 780-781.) Neither case created a bright-line distinction between 911 calls made when a caller is in "urgent need for help" and other 911 calls. Moreover, such a rule would be inconsistent with the " 'highly context-dependent' " analysis required by the California Supreme Court in *Blacksher*, *supra,* 52 Cal.4th at pp. 813-815. Under *Blacksher*, " 'the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had.' " (*Blacksher*, *supra,* 52 Cal.App.4th at p. 813.)

Here, the recording captured the following 911 conversation:

7

"OPERATOR:  Sacramento Police Department.

"JESSICA:  Um, yeah, I'd like to report uh, some suspicious activity.

"OPERATOR:  Okay.  Where does this take place?

"JESSICA:  Um, Altos Avenue.

"OPERATOR:  At what address on Altos Avenue?

"JESSICA:   Um, it looks like 3307.

"OPERATOR:  And what's going on?

"JESSICA:  Um, the neighbors across the way, I -- I just saw them load like, bags of marijuana into their trunk.

"OPERATOR:  Okay.  They still there?

"JESSICA:  Yeah.

"OPERATOR:  What kind of car?

"JESSICA:  A red Chevy Impala.

"OPERATOR:  Do you know the license plate number?

"JESSICA:  Um, I -- it's -- I can't see it but it's got black tinted windows.

"OPERATOR:  What makes you think they were bags of marijuana?

"JESSICA:  Cause you could see it.

"OPERATOR:  How big were the bags?

"JESSICA:  Um, like shopping bag size.  Like you know.

"OPERATOR:  How many of them did you see?

"JESSICA:  One, two -- two bags.

"OPERATOR:  Two bags?  Okay.  And any description of the persons involved?

"JESSICA:  Um, it looks like (unintelligible) it's a -- it's the (unintelligible) guy. He has long hair.  He has sunglasses on.

"OPERATOR:  Any clothing description?

"JESSICA:  Um, white t-shirt and jeans.

"OPERATOR:  And at 3307, is that the address of the house they came out of or is that?

"JESSICA:  That's the house.  That's the duplex that they're parked in front of.

"OPERATOR:  Okay.  And -- and did they come out of that duplet -- duplex?

"JESSICA:  Um, I -- they just pulled up over there.

"OPERATOR:  Okay.  You didn't see where they came out of though?

"JESSICA:  Uh-uh.

"OPERATOR:  Okay.

"JESSICA:  And I just -- cause this neighborhood is like, you know. It's trying to get back to normal.

"OPERATOR:  Okay.  Um, did you wanna give your name?

"JESSICA:  This is Jessica but I mean do I have to give my last name or anything?

"OPERATOR:  You don't have to give it at all.

"JESSICA:  Okay.

"OPERATOR:  Okay.

"JESSICA:  I prefer not to.

"OPERATOR:  Okay.

"JESSICA:  Okay.

"OPERATOR:  We'll send an officer to check it out.

"JESSICA:  Alright thanks.

"OPERATOR:  Alright bye."

Jessica conveyed an immediate concern about a public safety issue and the 911 operator asked for details to allow police to investigate further.  Reasonable participants in such a conversation would not have been putting together a case for trial.  Statements made primarily to assess a criminal situation, deal with threats or apprehend a perpetrator are not testimonial, even if it is reasonably apparent that the statements might later be used at a criminal trial.  (*People v. Romero* (2008) 44 Cal.4th 386, 421-422.)  In the

9

absence of a "testimonial" primary purpose, the confrontation clause is not implicated. Admission of the recorded 911 call did not violate defendant's Sixth Amendment right to confrontation.

II

Defendant next contends the trial court erred in admitting evidence of a prior crime. Defendant claims the details of the earlier crime were more prejudicial than probative.

The trial court allowed testimony that, in 2004 -- seven years before trial and five years before the drug and gun crimes at issue -- defendant fled on foot following a traffic stop, abandoning a car that contained nearly a pound of marijuana, along with scales and baggies. Defendant was willing to stipulate to the fact of the felony convictions arising out of the prior incident, but he objected to admission of the details of the arrest, arguing the details were more prejudicial than probative because too much time had passed. The trial court overruled the objection, noting its intent to give a limiting instruction. A limiting instruction was given before the arresting officer testified about the 2004 crime, and also in the final jury instructions.

Under Evidence Code section 1101, subdivision (b), evidence that a person committed a prior crime may be admissible when relevant to prove facts such as motive, intent or knowledge. The trial court has discretion to admit the evidence for the permissible purposes after weighing its probative value against any prejudicial effect pursuant to Evidence Code section 352. (*People v. Fuiava* (2012) 53 Cal.4th 622, 667-668.) The decision to admit prior act evidence is reviewed on appeal for abuse of discretion. (*Ibid.*)

In prosecutions for drug offenses, prior drug convictions are generally admissible to prove that the defendant possessed the drugs for sale and knew the narcotic nature of the drugs. (*People v. Williams* (2009) 170 Cal.App.4th 587, 607 (*Williams*).) Defendant contends, however, that the instant case is distinguishable because here the prosecution

10

had to prove more than the knowledge elements involved in *Williams*. But there is no basis for such a narrow reading of *Williams*.

Here, the evidence was more probative than prejudicial under Evidence Code section 352. The prior crime was not too remote (see *People v. Daniels* (2009) 176 Cal.App.4th 304, 317 [even 15-year-old crime not too remote if sufficiently probative]) and it was clearly probative. One of the issues in the case was whether defendant knew the marijuana was in the trunk of the car he was driving. In the 2004 incident, and again in 2009, defendant was stopped while driving a car containing a large amount of marijuana and items commonly associated with the sale of marijuana. The trial court found that on both occasions defendant fled on foot and "attempt[ed] to elude capture." The 2004 evidence tended to prove that defendant ran from his car in 2009 because, as before, he knew about, and did not want to be associated with, a large quantity of marijuana. In the absence of other evidence definitively establishing that defendant knew the contents of the trunk, it was reasonable to allow the jury to infer from the similarity of circumstances that defendant ran because he knew the car he was driving contained contraband and not because he was facing a potential traffic ticket. The trial court did not abuse its discretion in admitting the prior act evidence.

Defendant attempts to distinguish the 2004 crime from the instant offenses by pointing out that there was no gun or ammunition in the 2004 incident. But that difference is not dispositive. That a gun and ammunition would be present with $100,000 worth of marijuana is not inconsistent with knowledge about the marijuana itself or the intent to sell it and, despite defendant's assertion to the contrary, it does not distinguish the 2004 and 2009 crimes enough to break the logical connection between them.

Defendant further contends the 2004 evidence, even if properly admitted, was impermissibly used to show his propensity to commit the 2009 crimes. He complains that the prosecutor said in closing argument that defendant "ha[d] a history with marijuana and fleeing." According to defendant, the prosecutor's statement rendered the

11

trial fundamentally unfair. But defendant forfeited this contention by not objecting or asserting it in the trial court. (*People v. Fuiava, supra*, 53 Cal.4th at p. 679.)

In any event, the prosecutor also cautioned the jury: "Ladies and gentlemen, it's very important [that] you don't use this evidence for character, that just because he did it back in 2004, he did it here. That's not what this evidence is meant to present, but it does help show that he had knowledge of the items that were in the trunk on this particular occasion because he did pretty much the same thing back in 2004. Not only did he have a lot of marijuana, scale, and Baggies, but he fled, ran just like he did on March 14, 2009." Moreover, the trial court issued proper limiting instructions based on CALCRIM No. 375, directing the use of the 2004 offense only in "deciding whether or not . . . defendant acted with the intent to possess marijuana for sale in this case" or whether he "had knowledge that there was marijuana in the trunk of the car he was driving when he allegedly acted in this case" and explicitly warning against a conclusion that defendant had a bad character or was disposed to commit crime.

The trial court did not abuse its discretion in admitting the evidence of defendant's 2004 offense.

### III

In addition, defendant argues the cumulative prejudice that resulted from the trial court's errors caused the trial to be fundamentally unfair. But because we have concluded there was no error or abuse of discretion, we conclude defendant's claim of cumulative prejudice lacks merit.

### IV

Finally, defendant asserts the trial court erred in imposing a $500 criminal laboratory analysis fee. The Attorney General agrees.

Health and Safety Code section 11372.5 requires anyone convicted of the drug-related offenses enumerated in that statute to pay a criminal laboratory analysis fee of $50 per offense. Defendant was convicted of two offenses enumerated in Health and Safety

12

Code section 11372.5, plus eight other offenses not enumerated in that statute. In imposing a $500 laboratory fee, the trial court apparently multiplied the $50 fee by all ten offenses. In addition, the sentence on one of the two enumerated drug offenses was stayed pursuant to Penal Code section 654, so the fee for that offense should have been stayed. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 870.)

Thus, because defendant was convicted of two enumerated offenses, a $100 laboratory fee should have been imposed, with $50 of that fee stayed pursuant to Penal Code section 654.

### DISPOSITION

The judgment is modified to impose a criminal laboratory analysis fee of $100, with $50 of that fee stayed pursuant to Penal Code section 654. The judgment is affirmed as modified. The trial court is directed to prepare an amended abstract of judgment reflecting the judgment as modified, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

                                     MAURO          , J.

We concur:

           BLEASE         , Acting P. J.

           HULL          , J.